United States District Court
Northern District of California

1
2
3
4                        UNITED STATES DISTRICT COURT
5                       NORTHERN DISTRICT OF CALIFORNIA
6
7    CHRISTOPHER BRYAN, et al.,              Case No. 22-cv-00845-HSG
8                   Plaintiffs,              ORDER GRANTING IN PART AND
                                             DENYING IN PART MOTION TO
9            v.                              DISMISS
10   APPLE INC.,                             Re: Dkt. No. 27, 38
11                  Defendant.
12
13        Pending before the Court is Defendant Apple Inc.'s motion to dismiss.  Dkt. No. 27.  The
14   Court finds this matter appropriate for disposition without oral argument and the matter is deemed
15   submitted.  *See* Civil L.R. 7-1(b).  For the reasons detailed below, the Court **GRANTS IN PART**
16   and **DENIES IN PART** the motion to dismiss.
17   I.    BACKGROUND
18        Plaintiffs Christopher Bryan and Heriberto Valiente bring this putative nationwide class
19   action against Defendant, alleging that Apple's iPad Mini 6 is defective.  *See* Dkt. No. 20
20   ("FAC").  Specifically, Plaintiffs contend that the iPad's liquid crystal display ("LCD") screens
21   are prone to image distortions called "jelly scrolling," which "bends, warps, blurs and obscures
22   text and images rendering the Device unusable."  *See id.* at ¶¶ 1–2, 25.  Plaintiffs contend that the
23   defect is caused by the placement of a "controller board" within the iPad.  *See id.* at ¶¶ 3–4.
24   According to the complaint, Apple was aware of this defect, and publicly reported it just days after
25   the iPad's release, but has not addressed this issue and continues to sell the product without proper
26   disclosures.  *See id.* at ¶¶ 2–3.
27        Based on these allegations, Plaintiffs bring causes of action for violations of California's
28   Unfair Competition Law ("UCL"), Consumer Legal Remedies Act ("CLRA"), and False

Advertising Law ("FAL"); Colorado's Consumer Protection Act ("CCPA"); Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"); as well as for fraud, fraudulent omission/concealment, fraudulent inducement, negligent misrepresentation, and unjust enrichment. *Id.* at ¶¶ 91–204. Plaintiffs also seek an injunction prohibiting Defendant from continuing to engage in its allegedly deceptive practices. *See id.* at ¶¶ 122, 134, 146; FAC at 49 ("Request for Relief"). Defendant moves to dismiss the complaint in its entirety. Dkt. No. 23.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Rule 9(b) imposes a heightened pleading standard where fraud is an essential element of a claim. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003). A plaintiff must identify "the who, what, when, where, and how" of the alleged conduct, so as to provide defendants with sufficient information to defend against the charge. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. Rule 9(b).

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless,

United States District Court
Northern District of California

1  courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of

2  fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

3  2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

4  **III.    DISCUSSION**

5      Defendant asserts myriad reasons why the FAC is deficient. *See generally* Dkt. No. 27.

6  With one limited exception identified below, the Court is not persuaded by these arguments and

7  finds that the amended complaint is sufficient to survive the motion to dismiss stage.

8      **A.    Out-of-State Plaintiffs**

9      As an initial matter, Defendant contends that the California claims should be dismissed

10  because neither Plaintiff is a resident of the state.[1] *See* Dkt. No. 27 at 9–10. But the fact that

11  Plaintiffs are not California residents is not dispositive. "State statutory remedies may be invoked

12  by out-of-state parties when they are harmed by wrongful conduct occurring in California."

13  *Norwest Mortg., Inc. v. Super. Ct.*, 72 Cal. App. 4th 214, 224–225 (Cal. Ct. App. 1999); *see also*

14  *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7–9 (N.D. Cal. July

15  23, 2013). Here, Plaintiffs allege that Defendant is a California company, and its decisions about

16  the product design and advertising for the iPad Mini 6 were developed in and coordinated from the

17  company's headquarters in Cupertino, California. *See* FAC at ¶¶ 11, 15.

18      Although Defendant does not identify whether it is challenging the California-based claims

19  on the basis of standing or choice-of-law, Dkt. No. 35 at 2–4, the Court agrees with those courts

20  that have found "[i]t is more logical to consider named plaintiffs' ability to raise other state-law

21  claims as a question of commonality, typicality, and adequacy under Rule 23, rather than a

22  question of standing." *See Sultanis v. Champion Petfoods USA Inc.*, No. 21-CV-00162-EMC,

23  2021 WL 3373934, at *6 (N.D. Cal. Aug. 3, 2021); *Patterson v. RW Direct, Inc.*, No. 18-CV-

24  00055-VC, 2018 WL 6106379, at *1 (N.D. Cal. Nov. 21, 2018). A choice of law analysis also

25  "might demonstrate that a different state law should apply to a non-resident's California claims."

26  *In re Big Heart Pet Brands Litig.*, No. 18-CV-00861-JSW, 2019 WL 8266869, at *12 (N.D. Cal.

27

28  _____

[1] The parties do not appear to dispute that Plaintiff Bryan is a resident of Colorado and Plaintiff Valiente is a citizen of Florida. *See* FAC at ¶¶ 7, 9.

United States District Court
Northern District of California

1    Oct. 4, 2019).  Defendant does not offer any analysis of the differences between California law

2    and other potential jurisdictions, and the Court lacks sufficient information to address such issues

3    at this time.  Accordingly, as this Court recently explained, "whether non-California plaintiffs may

4    bring claims under California law is an issue better addressed at a later stage."  *Smith v. Apple,*

5    *Inc.*, No. 21-CV-09527-HSG, 2023 WL 2095914, at *2 (N.D. Cal. Feb. 17, 2023).

6        **B.    Standing**

7            Defendant also contends that Plaintiffs lack Article III standing to pursue injunctive relief.

8    Dkt. No. 27 at 21–22.  Defendant urges that Plaintiffs may not be misled in the future because they

9    are aware of the jelly scrolling issue now, and do not allege that they intend to purchase another

10   iPad Mini 6 in the future.  *Id.*

11           To have standing to seek injunctive relief under Article III, a plaintiff must "demonstrate a

12   real and immediate threat of repeated injury in the future."  *Chapman v. Pier 1 Imports (U.S.) Inc.*,

13   631 F.3d 939, 946 (9th Cir. 2011) (quotation omitted).  So once a plaintiff has been wronged, they

14   are entitled to injunctive relief only if they can show that they face a "real or immediate threat that

15   [they] will again be wronged in a similar way."  *Mayfield v. United States*, 599 F.3d 964, 970 (9th

16   Cir. 2010) (quotation omitted).  In the context of false advertising cases, the Ninth Circuit has

17   confirmed "that a previously deceived consumer may have standing to seek an injunction against

18   false advertising or labeling, even though the consumer now knows or suspects that the advertising

19   was false at the time of the original purchase."  *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956,

20   969 (9th Cir. 2018).  A plaintiff may establish the risk of future harm in two ways: (1) "the

21   consumer's plausible allegations that [they] will be unable to rely on the product's advertising or

22   labeling in the future, and so will not purchase the product although [they] would like to"; or

23   (2) "the consumer's plausible allegations that [they] might purchase the product in the future,

24   despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but

25   incorrectly, assume the product was improved."  *Id.* at 969–70.

26           Here, consistent with *Davidson*, Plaintiffs allege that "[d]espite these injuries, Plaintiff[s]

27   remain[] very much interested in purchasing from Apple as [they] believe that Apple is a reputable

28   company, appreciate[] Apple's commitment to sustainability and value[] Apple's storied

United States District Court
Northern District of California

United States District Court
Northern District of California

1    commitment to innovation." *See* FAC at ¶¶ 8, 10.  Plaintiffs also "look forward to purchasing

2    from Apple in the future and hope[] that [they] can be assured that Apple's representations about

3    its products are accurate." *See id.*  However inartful these allegations may be, the Court finds that

4    when these allegations are viewed in the light most favorable to Plaintiffs—as they must be at this

5    stage—they are sufficient to establish a risk of future harm.  Plaintiffs have alleged that they

6    cannot rely on Apple's labeling or marketing, and thus cannot purchase their products (including

7    the iPad Mini) although they would like to do so in the future if properly labeled.

8         **C.     Damages under Colorado Consumer Protection Act**

9         Defendant next argues that Plaintiffs are prohibited from pursuing monetary and injunctive

10   relief under the CCPA, Colo. Rev. Stat. § 6-1-113.  Dkt. No. 27 at 19–20.  Despite Defendant's

11   urging, § 6-1-113(2.9) now explicitly states that "[i]n a case certified as a class action, a successful

12   plaintiff may recover actual damages, injunctive relief allowed by law, and reasonable attorney

13   fees and costs."  Colo. Rev. Stat. Ann. § 6-1-113(2.9).

14        **D.     Equitable Relief**

15        Defendant also challenges Plaintiffs' claims for equitable restitution and unjust enrichment

16   because Plaintiffs do not allege that they lack an adequate remedy at law.  Dkt. No. 27 at 20–21.

17   Defendant suggests that because Plaintiffs also plead claims for actual damages, by definition they

18   cannot allege that they lack an adequate remedy at law.  *Id.*  Defendant relies on *Sonner v. Premier*

19   *Nutrition Corp.*, in which the Ninth Circuit upheld the dismissal of claims for restitution because

20   the plaintiff also had asserted a claim for money damages under the CLRA.  971 F.3d 834, 843–44

21   (9th Cir. 2020).

22        In response, Plaintiffs point out that this Court has previously explained that *Sonner* "did

23   not purport to disturb the well-established rule that equitable and damages claims may coexist

24   when they are based on different theories."  *See Brown v. Natures Path Foods, Inc.*, No. 21-CV-

25   05132-HSG, 2022 WL 717816, at *6, n.15 (N.D. Cal. Mar. 10, 2022).  However, Plaintiffs fail to

26   explain how their claims for damages and equitable relief are based on different theories.

27   Plaintiffs do not even assert in the complaint that they lack an adequate remedy at law to support

28   their restitution and unjust enrichment claims.  The Court therefore **GRANTS** the motion to

dismiss on this narrow basis.

### E.     Fraud-Based Claims

Defendant's primary argument is that Plaintiffs have not adequately alleged actionable misrepresentations or omissions for purposes of their fraud-based claims.[2]  *See* Dkt. No. 27 at 10–17.  Defendant contends that Plaintiffs have not—and cannot—identify any false or misleading statement that Apple made about the iPad Mini 6.  *Id.*  At bottom, Defendant states that "jelly scrolling" is "simply the way all LCD screens function," and does not impair the use of the product.  *See* Dkt. No. 27 at 1, 4–6.  Defendant further notes that it publicly addressed concerns about "jelly scrolling," and confirmed that this is normal.  *See id.* at 6, 12.  Plaintiffs also acknowledge this public statement "to niche tech publications" in the amended complaint.  *See* FAC at ¶¶ 1–2, 30, & n.4.  In short, Defendant disagrees with Plaintiffs' contentions that (1) the iPad Mini 6 contains a defect; and (2) Defendant misled consumers about the defect.  Defendant will have the opportunity to challenge the ultimate factual truth or falsity of Plaintiffs' allegations, but it is not the Court's role to resolve such disputes at the motion to dismiss stage.

Plaintiffs allege that Defendant failed to adequately disclose that the iPad Mini 6 suffered from jelly scrolling:

- Plaintiffs allege that "[d]ue to the Defect, the iPad Mini bends, warps, blurs and obscures text and images rendering the Devices unusable," and that users, including Plaintiffs, "have reported motion sickness, nausea, vomiting, and migraines when using the Device due to the Defect."  *See* FAC at ¶¶ 2, 8–10.  Plaintiffs further allege that as a result, the jelly scrolling defect "render[s] the display inoperable for its principal and intended uses."  *Id.* at ¶¶ 8–10.  This is enough to allege that the failure to disclose the jelly scrolling defect was material.

- Plaintiffs further highlight how important the screen is to the use of the iPad.  They

---

[2] The parties appear to agree that this includes both Plaintiffs' common law claims and statutory claims under the UCL, FAL, CLRA, CCPA, and FDUTPA.  *See, e.g.*, Dkt. No. 27 at 10, n.5.

6

explain that "a tablet is a highly portable PC whose primary interface is a touch screen that occupies the full length / width of [the] device," and "the screen is the most-used component." *See id.* at ¶¶ 18–19 (quotation omitted).  And "[b]ecause of the screen's centrality to the overall functioning of a tablet, the screen size and screen quality are the most crucial aspects to consider while buying a tablet." *Id.* at ¶ 19 (quotation omitted).  Consumers therefore expect the iPad "to exist independently of external monitors for their use and to enable reading, watching, and playing all the while free of characteristics that minimize their viewing pleasure, such as the Jelly Scroll Defect." *Id.* at ¶ 21.  In other words, Plaintiffs have alleged that the design and clarity of the screen are central to the product's function, and the jelly scrolling defect impaired that function.

- Plaintiffs further allege that Defendant had exclusive knowledge of and superior information about the defect, and thus was required to disclose it.  Plaintiffs explain how Defendant would have learned about jelly scrolling through its own pre-release testing and quality control, as well as consumer complaints.  *See id.* at ¶¶ 40–82.  As noted above, the amended complaint states that Defendant actually publicly acknowledged the existence of this issue.  *See id.* at ¶¶ 1–2, 30, & n.4.  Whether Defendant sufficiently disclosed the alleged defect by making public statements to certain media outlets, but not in its advertising, is a factual question that the Court need not address here.

- Plaintiffs state that they reviewed and relied on the product's "labeling, packaging, and marketing materials," which did not contain information about jelly scrolling or disclosures that the product may not work as advertised.  *See id.* at ¶¶ 7–8.  They conclude that had they known about the alleged defect, they would not have purchased the product "on the same terms." *Id.* at ¶¶ 8, 11.

United States District Court
Northern District of California

The Court finds that Plaintiffs have thus adequately alleged their fraud-based claims.[3]

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** the motion to dismiss as to Plaintiffs' claims for restitution and unjust enrichment, but otherwise **DENIES** the motion to dismiss in its entirety.  At this stage, the Court cannot say that amendment necessarily would be futile as to Plaintiffs' claims for restitution and unjust enrichment.  Plaintiffs may therefore file an amended complaint within 21 days of the date of this order.  Defendant's motion to stay discovery, Dkt. No. 38, is further **DENIED** as moot.

The Court **SETS** a telephonic case management conference on April 11, 2023, at 2:00 p.m. All counsel shall use the following dial-in information to access the call:

Dial-In:  888-808-6929;

Passcode:  6064255

For call clarity, parties shall NOT use speaker phone or earpieces for these calls, and where at all possible, parties shall use landlines.  The Court further **DIRECTS** the parties to submit a joint case management statement by April 4, 2023.

**IT IS SO ORDERED.**

Dated:    3/2/2023

_Haywood S. Gill Jr._
HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[3] Defendant also argues that Plaintiffs have not sufficiently alleged facts to support a claim under either the "unlawful" or "unfair" prongs of the UCL.  *See* Dkt. No. 27 at 17–18.  But Defendant's arguments are derivative of its arguments discussed in Section III.E, and fail for the same reasons discussed above.